CHANCERY.

## Jones *vs.* Lipscomb.

Case 21.

### ERROR TO MADISON CIRCUIT.

1. A bequest to a slave is void, (13 *B. Monroe,* 191,) unless the effect be to give freedom to the slave.
2. A bequest to a slave in Kentucky does not have the effect, constructively, to give freedom to a slave, especially when a contrary effect is apparent from the whole tenor of the will. The analogy between villenage in England, and slavery in Kentucky is not recognized.

January 2.          Chief Justice HISE delivered the opinion of the court.

Case stated.          The complainants, Dodson and Spicy, of the negro race, claim the right to their freedom, and legacies to each of two hundred dollars, under the following clause of the will of Humphrey Jones, deceased, to whom, in his lifetime, they belonged: " In consideration of faithful services, I will and require that my executors give my slaves, Dodson and Spicy, $200 each, to be paid out of my estate." The ground taken by the complainants council is, that Dodson and Spicy are by this clause rendered capable, by their enfranchisement, to take the legacies given to them—in other words, that by giving to them these legacies they have

been constructively emancipated, and thereby rendered capable, in legal estimation, of claiming and receiving them as valid bequests.

It is clear, that unless by this clause of the will of their master the complainants are liberated, the bequests to them are void, as ruled by this court in the case of *Graves, &c. v. Allen, &c.*, reported in 13 *B. Monroe*, 191, and in the cases their cited. And the rule applies as well to cases where the bequests to slaves are contained in the will of the owner, as where they are given by the will of another, unless by construction in the former case the effect of such devise or bequest would be to give freedom to the slaves in whose favor they are made. To support the claim of the complainants, the case of Hall against Mullin, decided by the appellate court of Maryland, and reported in 5 *Harrison & Johnson*, 192, and the case of *LeGrand v. Darnall*, decided by the supreme court of the United States, and reported in 2 *Peters*, 665, are cited as authorities conclusive of the question. But in the former case it is manifest that the judges did not base their opinion exclusively or mainly upon those clauses in the will of the testator, H. C. Hall, by which he devised certain real estate to *Dolly Mullin*, whose right to freedom was the subject of controversy in that case. It appears that Dolly Mullin belonged to the testator, and that in his life time he had sold and delivered her, to her reputed father, Basil, who, it was then erroneously supposed and believed, was entitled to his freedom under the will of his deceased master, but who, under the laws of Maryland, could not be emancipated because at the time his intended emancipation was to take effect he was over 45 years of age, nevertheless his right to freedom was believed to be good and not questioned, and Basil, after his purchase of Dolly from her master, H. C. Hall, attempted to make her free by a deed of manumission. It was under these circumstances H. C. Hall made his will and devised valuable real estate to Dolly Mullin for life, with remainder to her son,

JONES
*vs.*
LIPSCOMB.

1. A bequest to a slave is void, (13 *B. Monroe*, 191,) unless the effect be to give freedom to the slave.

Henry Mullin; and by the same will he also devises certain slaves to Dolly Mullin, and other slaves to various other devisees, and then, by a general clause, he emancipates all the remaining part of his slaves without further exception, so that as the facts appeared, Dolly Mullin was intended to be emancipated and was actually made a free woman either in virtue of the sale to Basil, and his deed of manumission, or if not, and if she, notwithstanding such sale and manumission, still continued to belong to the testator, then she was made free, not necessarily by implication alone, arising from the devises made to her of land and slaves, but by that provision of his will by which the testator emancipated all of the slaves which he owned except those specially devised to various devisees, amongst whom Dolly was not included. The question in that case then was not whether Dolly was made free by implication, under the clauses of the will alone, which devised land and slaves to her, but was she emancipated by testator, " *by a true construction of his whole will,*" taking all its parts together? It is manifest that Dolly was supposed to be a free woman by the sale to Basil, and her manumission by him; in this, however, he was mistaken, and because Basil was a slave, the sale to him, as well as his deed of manumission, were both void. This being so, she continued to belong to the testator, and obtained her freedom and capacity to take and hold the property devised to her by virtue of that provision of the will by which the entire residue of testators slaves, (necessarily including *Dolly* if she was his property,) were emancipated. It is true the court in that case unnecessarily go out of their way to express the opinion that, under those parts of the will by which property was devised to Dolly, she would, by implication, have a right to freedom; otherwise the devises would not be valid and efficacious but void, and such right to freedom, resulting by implication, then such devise would be valid and the will could be carried into complete effect. But concede that a devise to a slave,

nothing else in the will appearing to rebut it, would create a legal presumption or implication that the testator intended the manumission of such slave, to render him capable of taking the benefit of such devise, it would not follow that such implication or presumption, founded alone upon a devise or bequest, should be conclusive and prevail to effect the slaves liberation, when it appears from other parts of the will that the testator did not intend their emancipation, and that the bequest to them was intended as a mere gratuity, and as a compensation for past services.

The implication contended for does not arise, or at any rate cannot have a conclusive effect to liberate Dodson and Spicy—1st. Because, by the same will the testator does actually, in terms, emancipate four of his slaves and four only, by name—Dodson and Spicy not being amongst the number, as thus: "I will and require that my slaves Bob, and Hannah, and Chantis, and Jane, be free at my death." Now the testator gives these slaves their freedom in express terms, but gives them nothing else. It must be presumed that the testator, if he had intended that Dodson and Spicy should be free, that whilst he was preparing his will and engaged in the very act of selecting and nameing those of his slaves which he designed to liberate, that their names would then have been inserted with the rest in the clause by which the favoured slaves were manumitted.

The testator, from the fact that he did, by his will, liberate four only of his slaves, must be presumed to have understood that by law slaves to be entitled to freedom must be expressly manumitted by deed or will, or other written instruments executed for that purpose; and to have intended to emancipate those slaves, and those only named in that clause of his will, which expressly emancipates four of them by name, not including therein either Dodson or Spicy.

But further than this, to show that the testator did not intend to give freedom to the complainants, after emancipating four of his slaves by name, in the same

connection the testator provides as follows: "I will and require that my "*other slaves*," (an expression importing, without additional words, to limit their signification, "*all of the testators remaining slaves*,") have liberty to chose their masters at their value. Dodson and Spicy are necessarily included in this residuary clause, which, instead of supporting conclusively repels the implication founded upon the pecuniary legacies intended to be bequethed to these two slaves.

In the case reported in 2 *Peters*, the court there, as in the Maryland case, support the claim of the contestant to freedom not alone upon the devise made to him by the will of the testator of real or personal estate, and upon the implication thence proceeding, but because it was perfectly manifest from other parts of the will of Bennett Darnall that he regarded the devisee as a free person, and as entitled to his freedom by virtue of two deeds of emancipation which he had himself previously executed, and to which reference is made in his will; and although the devisee may not have, under the laws of Maryland, been entitled to his freedom at the dates of those deeds, yet the testator recites them, had full confidence in their validity, regarded the devisee as his own son, and treated him in his will as a free person, and as being entitled to his freedom, and the facts recited and the provisions made in the will of Darnall all tend, not to contradict, as in this case, but to support the implication founded upon the devise to the contestant for freedom.

It is insisted that the institution of slavery in this country, and that of *gross villenage*, as it anciently existed in England, bear a striking resemblance to each other, and that by analogy the principles of law governing and incident to the state of villenage as it existed formerly, between villain and lord, should apply to and govern in respect to the relation of master and slave in this country, and that as villains in gross in England might be enfranchised expressly by deed or by implication, as where the lord contracted with his

*2. A bequest to a slave in Kentucky does not have the effect, constructively, to give freedom to a slave, especially when a contrary effect is apparent from the whole tenor of the will. The analogy be-*

villain as a free man gave him an annuity, or an estate in fee for life or years, that therefore such acts should have a similar effect in this country to liberate slaves. The answer to this argument is, that according to the laws of this state contracts with a slave, and grants and conveyances to slaves, are void, and they can only be manumitted by deed, will, or other solemn written instrument.

Wherefore, the decree of the circuit court is affirmed.

TURNER and RUNYON for plaintiffs; BURNAM and CAPERTON for defendants.